IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHEN LEHMANN** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 21-4626** |
| | : |
| **LOUISVILLE LADDER INC.** | : |

# ORDER-MEMORANDUM

**AND NOW**, this 11th day of July 2022, following oral argument during our July 8, 2022 final pretrial conference on both parties' requests to clarify our July 6, 2022 Memorandum and Orders (ECF Doc. Nos. 80, 84, 85) as to the admissible evidence of Plaintiff's pre-accident conduct after he voluntarily withdrew his failure-to-warn theory of strict liability and seeking to clarify the admissibility of industry standards evidence under the Pennsylvania Supreme Court's consumer expectations test as more fully defined in our July 6, 2022 Memorandum (ECF Doc. No. 80), and for good cause, it is **ORDERED** we clarify our July 6, 2022 Order (ECF Doc. Nos. 84, 85):

1. Defendant may not introduce evidence of Mr. Lehmann's pre-accident conduct using the scaffold but the parties may introduce evidence of the scaffold's warnings for purposes of proving or defending a design defect strict liability theory;

2. Defendant may not introduce evidence of a competitor product survey and regulatory standards as relevant to the consumer expectations test unless Plaintiff opens the door to such evidence through competitors' scaffolds actually in the market consistent with our reasoning below; and,

3. Plaintiff shall file a Notice no later than **6:00 PM** today advising as to the design defect test(s) he will present at trial beginning tomorrow.

## *Analysis*

Stephen Lehmann sues Louisville Ladder for strict products liability after Mr. Lehmann fell from a model ST0606A steel rolling scaffold Louisville Ladder distributed.[1] Mr. Lehmann claims the scaffold is defective because its latch pins became unscrewed while Mr. Lehmann stood upon it. He fell through the scaffold and suffered injury.

We issued findings in a July 6, 2022 Memorandum addressing the parties' motions *in limine*.[2] We found, among other things, evidence of Mr. Lehmann's conduct using the scaffold irrelevant to Mr. Lehmann's design defect theory but relevant to his failure-to-warn theory.[3] We also found Louisville Ladder's proffered evidence of the scaffold's compliance with industry standards relevant to the risk-utility test of proving strict liability.[4] We did not address the evidence's relevance to the consumer expectations test.

We held an extensive final pre-trial conference on July 8, 2022. Mr. Lehmann announced he decided to withdraw his failure-to-warn theory of strict liability. He then asked whether dropping the failure-to-warn theory affects our July 6, 2022 finding Louisville Ladder cannot adduce evidence of Mr. Lehmann's pre-accident conduct at trial. Mr. Lehmann also asked us to clarify the admissibility of industry standards evidence like compliance with design standards of the industry and standards promulgated by the American National Standards Institute (ANSI) and the Occupational Safety and Health Administration (OSHA). He specifically asked if the evidence is admissible as relevant to the consumer expectations test.

We find evidence of Mr. Lehmann's use of the scaffold inadmissible because Mr. Lehmann dropped his failure-to-warn theory. Evidence the scaffold contained instructions, however, remains relevant to the design defect theory.

We also find Louisville Ladder cannot adduce industry standards evidence unless Mr. Lehmann opens the door, which would allow Louisville Ladder to respond.

### *We preclude evidence of Mr. Lehmann's pre-accident conduct but allow evidence the scaffold contained instructions.*

We found Mr. Lehmann's pre-accident conduct involving the scaffold irrelevant to his design defect theory in our July 6, 2022 Memorandum.[5] But we admitted evidence of Mr. Lehmann's pre-accident conduct as relevant to whether Louisville Ladder's alleged failure to warn caused Mr. Lehmann's harm because Mr. Lehmann then also proceeded on a failure-to-warn theory. Mr. Lehmann responded by withdrawing his failure-to-warn theory of liability in our final pretrial conference.

We now exclude evidence of Mr. Lehmann's pre-accident conduct using the scaffold as irrelevant because Mr. Lehmann does not pursue a failure-to-warn theory. As we found on July 6, evidence of Mr. Lehmann's conduct using the scaffold is not relevant to a design defect theory because the product, not the user's conduct, is on trial.[6] Evidence of a user's conduct is relevant only to prove "a plaintiff's voluntary assumption of the risk, misuse of a product, or highly reckless conduct."[7] Louisville Ladder's proffered evidence does not prove any of these defenses. Assumption of the risk requires Louisville Ladder to prove Mr. Lehmann "knew of a defect and yet voluntarily and unreasonably proceeded to use the product."[8] But the evidence does not show Mr. Lehmann knew of the claimed defect; at most, it shows he negligently failed to discover the defect.[9] The evidence also does not show "misuse," which requires Louisville Ladder to show Mr. Lehmann's use of the product was "unforeseeable, outrageous, and extraordinary."[10] Merely failing to check the latch pins is not outrageous or extraordinary. And the evidence is not highly reckless for the same reason: At most, it shows Mr. Lehmann's negligence. We follow the lead of Pennsylvania courts which regularly exclude such evidence.[11]

Evidence the scaffold contained instructions regarding its proper use remains relevant to Mr. Lehmann's design defect claim. Evidence the scaffold contained instructions regarding proper

3

use is relevant to the consumer expectations test because it makes it more likely a reasonable consumer would find the scaffold did not contain a "surprise" element of danger. Evidence the scaffold contained instructions is also relevant to the risk-utility test because it affects what a reasonable consumer would think about Louisville Ladder's assessment of the risks and utilities of designing the product as it did. We cannot shield the jury from evidence of the scaffold's instructions because the scaffold itself will be an exhibit in evidence; it would be bizarre to redact the instructions from the product.

But whether Mr. Lehmann heeded the scaffold's instructions is now irrelevant. The jury may consider evidence about the instructions as an item of proof relevant to whether the scaffold is defective in design; the jury may not consider the instructions to consider whether different instructions would have prevented Mr. Lehmann's injury. We will present a limiting instruction to the jury for counsels' review.

***We preclude Louisville Ladder from adducing industry standards evidence as relevant to the consumer expectations test unless Mr. Lehmann opens the door, which would allow Louisville Ladder to respond reasonably.***

Mr. Lehmann also seeks to clarify whether Louisville Ladder's evidence of a competitor product survey and compliance with ANSI and OSHA standards is admissible to the consumer expectations test. We find Louisville Ladder may adduce such industry standards evidence relevant to the consumer expectations test only if Mr. Lehmann opens the door to such evidence.

We detailed several reasons why Louisville Ladder's industry standards evidence is relevant to the risk-utility test in our July 6, 2022 Memorandum.[12] We did not consider whether this evidence bore relevance to the consumer expectations test because Louisville Ladder did not challenge the admissibility of this evidence under the consumer expectations test in its briefing.[13]

Mr. Lehmann may seek to prove his products liability claim under "either a 'consumer expectations' test or 'risk-utility' theory, or both."[14] The consumer expectations test measures "the

4

competing interests of consumers and sellers . . . from the perspective of the reasonable consumer."[15] A product violates the consumer expectations test if it is "dangerous beyond the reasonable consumer's contemplations."[16] "[T]he product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer."[17] The risk-utility test, on the other hand, balances the seller's interests versus consumer's interests "more from the perspective of the reasonable seller."[18] The risk-utility test "offers courts an opportunity to analyze *post hoc* whether a manufacturer's conduct in manufacturing or designing a product was reasonable."[19] The test "obviously reflects the negligence roots of strict liability."[20]

We today clarify whether Louisville Ladder's proffered evidence of compliance with industry standards is relevant to the consumer expectations test as Louisville Ladder did not specifically address this issue in the *in limine* briefing. We find Louisville Ladder cannot affirmatively adduce evidence of industry standards—including its competitors' designs and ANSI and OSHA standards—unless Mr. Lehmann first proffers industry standards evidence.[21] If Mr. Lehmann proffers such evidence, Louisville Ladder may respond with evidence "reasonably related in scope to [Mr. Lehmann's] evidence on the issue."[22]

We found industry standards evidence relevant to the risk-utility test last week.[23] We reasoned the risk-utility test embraces negligence principles and focuses on the manufacturer's conduct in designing the product. We found at least two factors of the risk-utility test support admission of industry standards evidence as relevant to the balancing of risks and utilities involved in the product's design. We also rejected the idea Mr. Lehmann must "open the door" to industry standards evidence before Louisville Ladder could admit industry standards evidence. We reasoned the risk-utility test embraces seven factors, any of which could be relevant to Louisville Ladder's conduct irrespective of Mr. Lehmann's proofs.

5

But the consumer expectations test requires a different analysis. The consumer expectations test asks whether the product contains an unknowably and unacceptably dangerous condition. This focus prevents Louisville Ladder from offering compliance with industry standards as relevant to the consumer expectations test because an unreasonably dangerous condition could be "widespread in an industry."[24] Unlike the risk-utility test, the consumer expectations test does not embrace factors regarding the manufacturer's assessment of risks and utilities. We find nothing in Pennsylvania Supreme Court's analysis of the consumer expectations test in *Tincher* permitting a manufacturer to argue its product complied with industry standards, so it cannot be dangerous under the consumer expectations test. The Pennsylvania Supreme Court's present discretionary grant of review of the Pennsylvania Superior Court's exclusion of industry standards evidence in *Sullivan v. Werner Co.* appears confined to the risk-utility test.[25] And Judge Pappert's persuasive reasoning in *Cloud v. Electrolux Home Products, Inc.* applies only to the risk-utility test.[26]

We recognize, however, Mr. Lehmann himself proffers evidence of differently designed scaffolds sold by Louisville Ladder's competitors. Mr. Lehmann's expert witness, Russ Ransic, opines Louisville Ladder's competitors sold differently designed scaffolds.[27] This is industry standards evidence because it regards what "other manufacturers" in the industry designed.[28] Mr. Lehmann argues such evidence is relevant to the consumer expectations test because evidence of "designs employed by other manufacturers" affects what a reasonable consumer would think about the dangerousness of Louisville Ladder's scaffold.[29] We agreed with this relevance argument in our July 6, 2022 findings, citing *Tincher*'s analysis "evidence of the existence and specifications of an alternative design is relevant and even highly probative to prove disputed issues in a products liability case."[30]

Should Mr. Lehmann adduce evidence Louisville Ladder's competitors sold differently designed scaffolds, Louisville Ladder may reasonably rebut this evidence with industry standards evidence. Pennsylvania courts permit defendants to adduce industry standards evidence after plaintiffs adduce such evidence.[31] For example, Judge Mariani recently found if a plaintiff "offer[s] evidence of government/industry standards in support of his strict liability claim or should such evidence be made use of by Plaintiff's expert, Defendants shall be permitted to offer evidence in rebuttal reasonably related in scope to Plaintiff's evidence on the issue."[32] While we continue to opine this door-opening standard should not apply to the risk-utility test because the test permits inquiry into the manufacturer's conduct,[33] we agree to allow the evidence for the consumer expectations test if Mr. Lehmann opens the door. It would be quite unfair to permit Mr. Lehmann to adduce evidence of alternate designs used in the industry, but to preclude Louisville Ladder from offering evidence about industry standards.[34] Louisville Ladder's evidence must remain "reasonably related in scope to [Mr. Lehmann's] evidence on the issue."[35]

Like Judge Mariani, we find the precise contours of Louisville Ladder's rebuttal evidence "must await trial."[36] But some findings are apparent. For example, Mr. Ransic's report discusses the alternative design of a scaffold sold by Nu-Wave. If Mr. Ransic testifies about Nu-Wave selling an alternative scaffold, this constitutes evidence Louisville Ladder did not comply with industry standards because Louisville Ladder's scaffold did not comply with Nu-Wave's safer standard. Louisville Ladder could respond to such evidence with, for example, the competitor products survey we previously admitted. But Louisville Ladder could not, for example, respond to such evidence by arguing its scaffold complied with ANSI or OSHA standards unless Mr. Lehmann also adduced evidence the Nu-Wave design complied with ANSI and OSHA standards. Compliance with ANSI and OSHA standards is not evidence "reasonably related in scope" to

7

evidence one of Louisville Ladder's competitors sold a differently designed product; the mere difference in design does not allow Louisville Ladder to argue about industry standards promulgated by organizations not manufacturing scaffolds within the industry. We will address further evidentiary concerns as they arise at trial.

*[signature]*
**KEARNEY, J.**

---

[1] ECF Doc. No. 1.

[2] ECF Doc. No. 80.

[3] *Id.* at 19–22.

[4] *Id.* at 5–19.

[5] *See id.* at 19–22.

[6] *Id.*

[7] *See Sullivan v. Werner Co.*, 253 A.3d 730, 748–49 (Pa. Super. Ct. 2021), *appeal granted*, No. 324 EAL 2021, 2022 WL 2062309 (Pa. June 8, 2022).

[8] *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1096 (Pa. 2012).

[9] *See, e.g.*, *Charlton v. Toyota Indus. Equip.*, 714 A.2d 1043, 1047 (Pa. Super. Ct. 1998) (evidence users of forklift failed to pay attention at most constituted negligence).

[10] *Wright v. Ryobi Techs., Inc*, 175 F. Supp. 3d 439, 448 (E.D. Pa. 2016).

[11] *See, e.g.*, *Sullivan*, 253 A.3d at 749 (affirming exclusion of similar evidence as here); *Charlton*, 714 A.2d at 1047; *Robinson v. B.F. Goodrich Tire Co.*, 664 A.2d 616, 619 (Pa. Super. Ct. 1995).

[12] ECF Doc. No. 80 at 5–19.

[13] ECF Doc. No. 72 at 7.

---

[14] *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 406 (Pa. 2014).

[15] *Id.* at 387.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 389.

[20] *Id.*

[21] We are not offering an advisory opinion. The parties raised the same issue in their motions *in limine*. *See* ECF Doc. No. 72 at 7–8 (Louisville Ladder arguing its industry standards evidence is admissible if Mr. Lehmann opens the door). Louisville Ladder argued its industry standards evidence is at least admissible to rebut Mr. Lehmann's proffered evidence. *Id.* Because we now find the consumer expectations test and risk-utility test require different evidentiary rulings, we must clarify the test to which industry standards evidence is relevant.

[22] *Palmer v. Black & Decker (U.S.) Inc.*, No. 20-1084, 2022 WL 1813848, at *9 (M.D. Pa. June 2, 2022).

[23] ECF Doc. No. 80 at 5–19.

[24] *Palmer*, 2022 WL 1813848, at *9.

[25] *See Sullivan*, 2022 WL 2062309, at *1 (granting appeal to answer whether the Superior Court's exclusion of industry standards evidence in *Sullivan* is "contrary to *Tincher*'s recognition that strict liability and negligence substantially overlap in product liability cases, particularly as to the 'risk/utility' defect theory plaintiffs pursued in [*Sullivan*]").

[26] No. 15-571, 2017 WL 3835602, at *2 (E.D. Pa. Jan. 26, 2017).

[27] *See* ECF Doc. No. 35-6 at 34 (mentioning "design changes implemented by other manufacturers," including Nu-Wave and Werner Company).

[28] *Sullivan*, 253 A.3d at 737.

[29] ECF Doc. No. 67 at 8.

[30] *Tincher*, 104 A.3d at 387.

[31] *Palmer*, 2022 WL 1813848, at *9; *Mercurio v. Louisville Ladder, Inc.*, No. 16-412, 2019 WL 1657325, at *8 (M.D. Pa. Apr. 17, 2019); *Gaudio v. Ford Motor Co.*, 976 A.2d 524, 544 (Pa.

Super. Ct. 2009); *see also Dunlap v. Fed. Signal Corp.*, 194 A.3d 1067, 1076 (Pa. Super. Ct. 2018) (Lazarus, J., dissenting).

[32] *Palmer*, 2022 WL 1813848, at *9.

[33] ECF Doc. No. 80 at 15.

[34] We note the Superior Court in *Sullivan* did not address whether a plaintiff opening the door by adducing evidence "about other scaffolds' deck pins" allows defendant to adduce industry standards evidence. *See Sullivan*, 253 A.3d at 748 n.10. While the defendant in *Sullivan* raised the issue, the Superior Court did not address it because the parties failed to present a "developed argument on th[e] issue." *Id.*

[35] *Palmer*, 2022 WL 1813848, at *9.

[36] *Id.*